**RUSSELL T. WALKER v. STATE OF FLORIDA**

13 So. (2nd) 4                                    January Term, 1943
March 5, 1943                                            Division B

*William C. Pierce* and *W. K. Zewadski,* for appellant.

*J. Tom Watson,* Attorney General, *Woodrow M. Melvin,* and *John C. Wynn,* Assistant Attorneys General, for appellee.

SEBRING, J.:

Russell T. Walker was tried and convicted of breaking and entering a store building occupied by Rutland Brothers, Inc., in St. Petersburg, Florida, with intent to commit grand

larceny. The building was entered in the nighttime. There were no eye witnesses to the crime. The outer doors of a safe had been broken open. The burglars had failed in their efforts to open the inner doors of the safe, which would have permitted access to a strong box containing approximately $8800.00.

Entrance into the store building had been effected by breaking open a second-story window which opened onto the roof of an adjoining building. Heel marks and shoe prints on the tar and gravel roof indicated that two men had entered the building. One of them had been wearing a pair of Florsheim shoes, estimated to be approximately size 9. When Russell T. Walker was arrested several weeks after the burglary, he was wearing a pair of Florsheim shoes, size 9D.

From the facts that a jury might find, it appears that Walker and his wife and one Dapos came to St. Petersburg several days before the crime. Walker brought with him a traveling bag containing two pistols, a crowbar, a drill, a flashlight, gloves, lead pencil, chalk, rope. He turned the bag over to a friend in St. Petersburg to keep until called for. He called for the bag the day of the burglary.

When Walker first came to St. Petersburg, he made the acquaintance of one Pee Wee Heller. During the course of a conversation, he inquired of Heller if he knew "where there was any place around the City where there would be some safes with money in them." He made an offer to Heller to "cut him in." According to Heller, he refused to have anything to do with the proposition; but Walker persisted saying, "We are not going to tell you what we do, but you can look in the papers and you will see." On the evening of the burglary, Walker confided to a friend who was a bartender in a cafe: "Rutland's is the best place."

Approximately 10:30 the night of the crime, Walker and Dapos left the cafe where they had been loitering and drinking, telling the bartender that they would return later in the evening. Some hours later they returned, dishevelled, tired, sweaty, dirty. At that time Walker told Pee Wee Heller: "We couldn't make it—we come within two inches of getting the money—I don't know how much was there; but we come

within two inches of getting it. I throwed the hammer until I couldn't throw it another time." Heller asked where this had happened. Walker answered: "The big department store down the corner—Rutland's."

The morning paper carried a news item that the store building occupied by Rutland Brothers, Inc., had been burglarized the night before.

At a later date Walker was arrested, charged with the crime. While out on bond and awaiting trial Walker talked with his bartender friend, asking him to keep silent and to tell Heller to do likewise.

Some days later Heller received a telegram from Tampa instructing him to call a certain telephone number at Atlanta, Georgia. Heller did so, and talked to Walker. Walker instructed him to come to Atlanta and call on a certain lawyer, one Finch, by name. Heller did so; and was paid $200 by Finch not to testify in the case. Walker was not present when the money was paid. When the case was called for trial, Heller testified as a witness for the State.

It is contended that this evidence is not sufficient to prove the guilt of Walker. It is true that no one saw the crime committed. Walker was never identified as being actually, or constructively, present at the scene of the crime. The case, therefore, rests largely upon circumstantial evidence, coupled with admissions made by Walker before and after the crime was committed. Was this evidence sufficient? We think so. "While it is incumbent upon the State to prove every element of the offense the proof may be by evidence of circumstances that are sufficient to support inference of the guilt of the offense found by the verdict. Absolute metaphysical and demonstrative certainty is not essential to sufficient proof by circumstances in a prosecution for crime. Chason v. State, 148 Fla. 540, 4 So. (2nd) 691, 692. We think this evidence satisfies the rule. Under the facts of this case, the credibility of the witnesses and the weight and sufficiency of the evidence were matters for the jury.

The contention is also made that the trial court should have excluded the testimony of the witness, Heller, that he talked by telephone with Walker, in Atlanta, Georgia. The

complete answer to that contention, we think, is that nowhere in the record does it appear that such testimony was objected to when given; nor did defendant make a motion to have it excluded after it was given. This being so, the point may not now be urged for the first time, on appeal. Whether Heller actually talked to Walker by telephone was a question for the jury. If Heller did have such conversation with Walker, it was certainly competent for Heller to testify concerning his transaction with the lawyer, Finch, pursuant to that conversation.

We have carefully examined all other questions raised by appellant and find them to be without merit.

On the whole, it appears to us that the substantial rights of appellant were amply protected in the court below and that the evidence in the case is not only consistent with guilt, but, when taken as a whole, is inconsistent with innocence.

The judgment, therefore, should be affirmed; and it is so ordered.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.